Campbell, Chief Justice,
delivered the opinion of the court.
There is only one question about which serious controversy arises. Several of the questions that would otherwise call for discussion are concededly settled by the earlier case of Austin Company, 58 C. Cls. 98. The one question referred to involves the rental rates which should be allowed to McLean Company, who, as subcontractor, performed the work. *561 In considering this question when the matter of settlement between the Austin Company and the Government was pending, the Bureau of Yards and Docks took the position that the rental rates should not exceed 2y2 per cent per month on the estimated value of the subcontractor’s plant. The contract between the plaintiff and Government provided that in case of the utilization of old plant “ secured for the work by the contractor on a rental basis, the Government will pay to the contractor a rental price for such plant, the rental charge to be 2% per cent per month of the estimated cost of similar new plant.” Construing this stipulation as limiting the right of the officer in charge to approve any higher rate, the board allowed, and there was paid on the rental item, $24,805.48. The facts show that the McLean Company expressly refused to undertake the work and use its equipment at these rates, and it was not until the matter was thoroughly investigated and it was apparent that the work could not proceed at all upon the basis of these rates that the McLean Company was informed that the rental rates submitted by it would be paid. The proposed rates were reasonable and fair and did not exceed, but in several instances were less than, rates for similar plant and equipments being at the time paid by other Government branches. Indeed, except at rates such as were agreed upon the work would have been indefinitely delayed.
A contract was drawn between the plaintiff and the McLean Company, signed by them and approved by the officer in charge. It bears date December 8, but was not in fact executed until February 5. However, on January 17, the officer in charge by letter confirmed the schedule of rental rates as it subsequently appears in the contract. Up to that time all parties were proceeding apparently as if the work was to be done in accordance with the stipulations of an existing contract between plaintiff and the Government, known as Contract No. 2713, and that- what was. called a change order was issued for this new work under the Contract No. 2713. These change orders were the method by which new or additional projects were brought under the operation of the contract. See Austin Co. case, supra. It does not ap *562 pear, however, that such a change order was actually issued, though it does appear that parties began and continued their negotiations upon the theory that it would be or had issued. It has not been brought into the record, and if it in fact existed there is no reasonable explanation for the execution of the new Contract No. 2687. In our view, this situation does not defeat the subcontractor’s right to compensation based upon the schedule of rates stated in his contract with plaintiff, since they are in every way just and fair rates. If the Government be not bound by this contract rate, it is at least bound to pay the reasonable rental value of the equipment actually used, and by the use of which it benefited. In our opinion, payment of these rates should be made for the period of use, and we find no authority for charging the rates from the dates of shipment or bills of lading of the several parts of equipment. The suggestion that the Government control of railroads should make it responsible for delays in delivery is not tenable, because such control did.not occur until the end of December, while rents1 are charged in the bills filed from earlier periods. The abnormal weather conditions, which sufficed to relieve the subcontractor of liability for liquidated damages because of delay in completing the work, were no doubt influential in causing other delays. The statements of its bills whereby the subcontractor credits the Government with one-half of the time of delay (after allowing one week for delivery) is not consistent with a claim that the Government was bound for all the time of delay.
The board allowed, as we have said, 2% per cent per month on the stated value of the plant, but the contract calls for 2% per cent per month of the “ estimated cost of similar new plant.” The amount of estimated cost of new plant does not appear. The value given by the subcontractor of its plant for the purpose of fixing the price at which the Government could take it over was apparently adopted by the board as the basis of rentals, but this valuation does not with much certainty show an estimated value of similar new plant. The evidence satifies us that the schedule of rentals was reasonable and just and should be applied in the circumstances of this case from the times of arrival of the different parts of *563 the equipment at the place of work until the work was completed, and judgment is awarded on this item accordingly. The findings show other items for which judgment is also allowed.
The plaintiff is entitled to recover the several sums following: (1) the said sum, of $43,091.74, mentioned in Finding VIII, after deducting therefrom the amount already paid, which leaves a balance of $18,286.26; (2) the further sum of $6,908.08, mentioned in Finding IX, with 15 per cent added for percentages due the contractor and subcontractor, aggregating $7,944.29, and (3) the further sum of $2,785.87 mentioned in Finding X, with 15 per cent added for percentages due the contractor and subcontractor aggregating $3,203.75, and (4) also to recover the further sum of $7,360.65 mentioned in Finding XI, said several amounts aggregating the sum of $36,794.95.
Hay, Judge,; DowNey, Judge; and Booth, Judge, concur.